CHAUNCEY W. MOORE and others *v.* WILLIAM WARD and others.

Where a party, without consideration, accepts a draft with a conditional understanding that it is to be used for a special purpose, in its application to which purpose he has some interest, and it is converted to a different purpose, he is not liable upon it except to an innocent holder, who has taken it before maturity, and given a good consideration for it. But if the acceptor receives a full consideration for his acceptance, he is liable thereon to the holder, and it is immaterial what use was made of the draft by the drawer, or whether the holder has paid value therefor or not.

W. accepted certain drafts of the R. R. V. U. R. R. Co., upon the agreement that they should provide funds to take them up as they matured. The company at the same time pledged with W. bonds to an amount, at their par value, exceeding the drafts, upon the agreement that W. might sell them without notice, and reimburse himself the amount of his acceptances if they were not provided for by the company pursuant to their contract, and might use them in the *interim*, provided he would supply their place with similar bonds, upon the company's paying the drafts before maturity. The drafts were to be used upon an uncompleted part of the company's route. *Held*—

I. That the acceptance was not an accommodation acceptance by W., but was one for value.

II. In the absence of any evidence, as to W.'s use of the bonds, or of any loss to him thereon, it was immaterial that the company used the acceptances for a different purpose than that for which they were intended to be used; and it was immaterial whether the holder, an indorsee, paid value for them or not.

III. That evidence of W. being interested in the completion of the railroad was irrelevant, and properly excluded.

APPEAL by defendants from a judgment entered on a verdict of a jury. This action was brought upon an acceptance of the defendants, drawn by The Rock River Valley Union Railroad Company for $1,000, accepted by the defendants, and indorsed to the plaintiffs. The cause was tried before Judge Ingraham and a jury. The draft having been read in evidence, the plaintiffs rested. The defendants then offered evidence of the following facts: That the draft was one of eight of an aggregate amount of $21,675.43, drawn by the Rock River Valley Union Railroad

Company on the defendants, and accepted by them. To show the agreement under which these drafts were accepted by the defendants, they introduced, in evidence, the following letters, written by the president of the Rock River Valley Union Railroad Company to them:

> "Office Rock River Valley Union Railroad
> Company, No. 18 Exchange Place.
> "New York, August 25th, 1853.

"Messrs. Ward Brothers & Co.,
   New York.

"Gentlemen,—The Rock River Valley Union Railroad Company may have occasion to draw on your house from time to time in sums to suit, amounting in all to $10,000 or $15,000, at 60 days' date, for use on the Janesville end of the road; and in case any drafts should be drawn for that purpose by me, I crave due honor on presentation, of which due advice will be given you, charging your usual commission for accepting; and for my drafts so drawn, I agree to deposit with you bonds of the city of Janesville, at a margin of 15 per cent. as collateral security, and to place you in funds at least three days before the maturity of my drafts, otherwise you are to avail of the said bonds for your reimbursement without further notice.

> "Respectfully yours,
> "A. HYATT SMITH, *Pres't.*

"Approved—R. J. WALKER, *Director and Trustee.*

"In accordance with the above I beg to advise my draft in favor of A. Hyatt Smith, Aug. 8th, 90 days, which please honor for $1,700."

> "New York, Sept. 28, 1853.

"Messrs. Ward Brothers & Co.

."Gentlemen,—It is the desire of the company to extend the amount stipulated in the annexed letter, to an amount not exceeding in all twenty-two thousand dollars, upon the same terms

therein set forth, and have to request you to honor my drafts in conformity.

"Respectfully yours,

"A. HYATT SMITH, *Pres.* R. R. V. U. R. R. Co."

." Herewith you will receive 23 bonds of the city of Janesville, for $1,000 each, to be held by you. as collateral in accordance with the terms of the letter, and the receipt to be given by you to show more fully the nature of the transaction."

To this letter was attached a list of the drafts drawn by the railroad company on the defendants, among which was the acceptance in suit.

The defendants also introduced in evidence the following receipt given by them to the company :

"New York, September 28th, 1853—Received from A. Hyatt Smith, Esq., President R. R. V. U. R. R. Co., twenty-three of 8 p. c. city of Janesville bonds of the par value of one thousand dollars each, as collateral security for his several drafts accepted by us (as advised), under his letters to us of the 25th August, and September 28th, as follows:

[Here follows a list of drafts including the draft in suit.]

"Said bonds are numbered as follows:

| | | |
|---|---|---|
| 1 a 9 - - - 9 | 61 a 68 - - - 8 | |
| 47 a 50 - - - 4 | 72 & 75 - - - 2 | |
| Total - - - - - - - - 23 | | |

· "In case of non-fulfillment on the part of said company to place us in funds in accordance with the above-mentioned letters, authority has been given to sell the said bonds for reimbursement, without further notice ; and their consent given us to use, transfer or hypothecate the same in the mean time at our option, we being required, on payment or tender of the amount of said drafts at any time before said drafts mature, or bonds shall have been sold, to return to said company an equal quantity of said bonds, and not the specific bonds deposited.

"WARD BROTHERS & Co."

No evidence was offered by the defendants as to what had been done with the bonds referred to in this receipt, or as to their value.

The defendants offered to prove that, on the upper or Janesville end of the road, the line was entirely uncompleted; that the other end was partially completed; and that the defendants were creditors, as mortgage bondholders and otherwise, of the company to the amount of over $100,000 at the time the agreement above described was made. This evidence was objected to and excluded by the judge. It further appeared that the draft was passed by A. Hyatt Smith, President of the Rock River Valley Union Railroad Company, to the firm of H. O. Clark & Co., of which firm he was a member, as part of the capital which he had agreed to invest in that firm, and that it was passed by them to the present plaintiffs, by whom it was applied on a debt due to them from H. O. Clark & Co., but whether it was in absolute payment and discharge of the debt did not very distinctly appear. On this evidence the judge directed the jury to find a verdict for the plaintiffs, and judgment having been perfected on the verdict which was rendered pursuant to this direction, the defendants appealed.

*P. T. Woodbury*, for the appellants. I. To warrant an unqualified direction at the trial in favor of either party, the facts claimed to have been proved by the party against whom the direction or instruction is given must be undisputed. *Rich* v. *Rich*, 16 Wend. 676; *Dwyer* v. *Sowzer*, 6 ibid. 437; *Crawford* v. *Wilson*, 6 Barb. 518.

II. The facts proved constituted a perfect defence to the action, and the court erred in instructing the jury that, on the evidence, the plaintiffs were entitled to recover.

1. The plaintiffs did not take the draft in the regular course of trade, and were not holders thereof for value. Receiving paper on account of a pre-existing debt, even when received as so much payment, is not receiving it for value, or in the regular course of trade. *Coddington* v. *Bay*, 20 Johns. 651; *Payne* v.

*Cutler*, 13 Wend. 605; *Stalker* v. *McDonald*, 6 Hill, 93; *Roosa* v. *Brotherson*, 10 Wend. 85; *Holbrook* v. *Mix*, 1 E. D. Smith's R. 159.

2. The acceptance by a creditor of a bill or note of a third person, even when not indorsed by the debtor, never operates as a satisfaction of a precedent debt, unless it is expressly shown that such at the time was the understanding, even although a receipt is given acknowledging the bill or note to have been received *as payment in full.* *Noel* v. *Murray*, 1 Duer, 388; *Munroe* v. *Hoff*, 5 Denio, 362; 1 Smith's Leading Cases, 256, note; *Porter* v. *Talcot*, 1 Cow. 359; *Raymond* v. *Merchant*, 3 ibid. 147; *Burdick* v. *Green*, 15 Johns. 247. And see *Fulton Bank* v. *Phœnix Bank*, 1 Hall Sup. Ct. R. 574.

3. If the plaintiffs are not holders in the regular course of trade, and for value, the defendants can set up, as against them, the same defence which they could against the drawers or payees, viz. : a fraudulent diversion of the draft from the purposes stipulated between the drawers and acceptors when it was accepted. *Wardell* v. *Howell*, 9 Wend. 172; *Brown* v. *Taber*, 5 ibid. 566; *Small* v. *Smith*, 1 Denio, 583; *Ontario Bank* v. *Worthington*, 12 Wend. 593.

III. The court erred in refusing to receive evidence of the special interest of the acceptors in the completion of the Janesville end of the road.

*F. E. Mather*, for the respondent. I. There being no conflict of testimony, it was the duty of the judge to charge as he did.

II. Defendants showed nothing impeaching the plaintiffs' title as *bona fide* holders of the acceptance.

1. The plaintiffs received it for a valuable consideration in the usual course of business, before maturity, and without notice of any defect of title or consideration. Story on Bills, § 192; Story on Prom. Notes, § 195 and note; *Frisbe* v. *Larned*, 21 Wend. 450; *St. John* v. *Purdy*, 1 Sandf. S. C. R. 9; *Seneca Co. Bank* v. *Neass*, 3 Comst. 442; *Youngs* v. *Lee*, 18 Barb. 187.

2. The parties who transferred it to the plaintiffs so received it, and plaintiffs are entitled to all the benefit thereof. Same authorities; *White* v. *Springfield Bank*, 3 Sandf. S. C. R. 222; *Bank of St. Albans* v. *Gilliland*, 23 Wend. 311; *Bank of Salina* v. *Babcock*, 21 ibid. 499; *Mohawk Bank* v. *Carey*, 1 Hill, 513.

III. The acceptance was not an accommodation one, nor made without consideration.

1. Defendants agreed to receive a commission for accepting.

2. They also had a deposit of negotiable eight per cent. bonds to the amount of $23,000, as a further consideration for the acceptance. Byles on Bills, p. 177; Story on Bills, § 183; *Cameron* v. *Chappel*, 24 Wend. 94; *Dow* v. *Schutt*, 2 Denio, 621.

3. The bonds were not merely received as collateral security, but were in law exchanged with defendants for the acceptance.

IV. Defendants did not show any fraudulent diversion of the draft. No proof was given that it had not effected the substantial purpose for which it was made and accepted.

V. The evidence offered by the defendants, and excluded, was insufficient, if not irrelevant.

DALY, J.—Nothing had been established on the part of defendants to render it necessary for the plaintiffs to show that they were holders for value. The defendants accepted the draft in pursuance of an agreement between them and the drawer, by which they received certain bonds to the par value of $23,000, on condition that they would accept drafts for the railroad company, of which the drawer was the president, to an amount not exceeding $22,000. They accepted drafts to the amount of $21,675.43, the last acceptance being three of $1,000 each, one of which was the draft in suit. By the terms of this agree ment the drawer was to place them in funds to meet their acceptances at least three days before they became due, or the defend-

ants were to be at liberty to sell, hypothecate, or transfer the bonds, to reimburse themselves. There was, therefore, no want of consideration, but, presumptively, a full and adequate consideration for their accepting the draft in suit; and before they could impeach or inquire into the title of the plaintiffs it was necessary for them to show a want of consideration at the time the draft was accepted, or a subsequent failure of consideration. The par value of the bonds when they were placed in the hands of the defendants was equal to the amount to which the defendants accepted, including the draft in suit; or if they were not of that actual value, or afterwards fell in value, and proved insufficient to secure the defendants to the amount of their acceptances, it rested with them to show it, which they did not. The court was, therefore, justified in concluding that they had received a full consideration for accepting the draft; and if they had, then it was wholly immaterial whether the plaintiffs had given value for the draft or not; as the holders, they were entitled to recover it.

It is urged that the acceptance of the defendants was for a special purpose; that the amount for which they agreed to accept was to be used on the Janesville end of the road, and that the draft in suit was used by the drawer for a different purpose—having been given by him, to the plaintiff, for an antecedent debt. But if they received a full consideration for accepting it, it is wholly immaterial what use was made by him of the draft. Where a party, without consideration, accepts a draft with a condition and understanding that it is to be used for a special purpose, in its application to which purpose he has some interest, and it is converted to a different purpose, he is not liable upon it, except to an innocent holder, who has taken it before maturity, and given a good consideration for it. But the defendants are not in this position. They offered to show that when they made the agreement above referred to, they were creditors of the railroad company, as mortgage bondholders, to the amount of $100,000, and that the Janesville end of the road was not completed; with a view, it is to be presumed, of showing that they were interested in the

amount of the draft being applied to the purpose for which it was drawn. But this evidence, if it had been admitted, would not have changed their position, and brought them within the rule referred to. The inducement to the acceptance of this draft, and of the other drafts included in the agreement, was not that the defendants were creditors of the company, but it was a distinct consideration, the placing of securities in their hands sufficiently ample to cover them to the extent of their acceptances. It was, therefore, 'a transaction entirely distinct and separate. Even if it had been shown that the sale or hypothecation of these securities had the effect to lessen the value of the other bonds of the company mortgaged to the defendants, it would not relieve. them from their liability upon these acceptances to the holders of the drafts, whether the holders had given value for them or not. But whether it would or not, nothing of this kind was attempted to be shown. As the case stood before the court, they had received a full consideration for the acceptance of this draft; they were bound to pay it, and had no right to call upon the plaintiffs to show that they had taken it for value.

But, if I deemed the point essential to the determination of this case, I could not agree with the other members of the court, that the plaintiffs are holders for value, so as to give them a right to recover upon a draft accepted without consideration, and diverted from the purpose for which it was accepted. In the courts of the United States, and in several of the states, the circumstances under which this draft was taken by the plaintiffs would be sufficient to make them holders for value. In this state, however, I understand the law, as settled, to be otherwise; but my reasons for so thinking would require an extended and careful examination of the course of our judicial decisions, which it is unnecessary that I should go into, as we all agree that the judge was right in telling the jury that, upon the evidence, the plaintiffs were entitled to recover.